UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARCUS RILEY, as Independent Administrator of the Estate of CYNTHIA SUDOR, deceased, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, ADVOCATE TRINITY HOSPITAL, JACKSON PARK HOSPITAL AND MEDICAL CENTER, RITA MCGUIRE, M.D. and NASEEM FATIMA, M.D, <br><br> Defendants. | Case No. 18-cv-04810 <br><br> Judge Sharon Johnson Coleman |

## MEMORANDUM OPINION AND ORDER

Marcus Riley, the Independent Administrator of the Estate of Cynthia Sudor, filed this medical negligence suit, claiming defendants failed to diagnose and treat Sudor for a urinary tract infection ("UTI"), resulting in her death. Several defendants have now moved for summary judgment: Advocate Trinity Hospital ("Advocate") moves for summary judgment in its favor on Count III, a wrongful death claim, and Count VII, a survival act claim; Nassem Fatima M.D. moves for summary judgment in her favor on Count V, a wrongful death claim, and Count VII; and Jackson Park Hospital ("Jackson Park") moves for partial summary judgment on Count VI, a wrongful death claim, and VII, as to any respondeat superior liability resulting from Riley's claims against Fatima. For the following reasons, the Court denies all three motions [160] [161] [162].

1

**Background**

*Facts*

The following facts are undisputed, unless otherwise noted.[1] On May 25, 2015, Sudor was admitted to Advocate, complaining of vaginal bleeding. She was provided care by Nurse Amy Mashburn-Green, R.N. ("Nurse Green"), a registered nurse. Nurse Green worked in triage for the labor and delivery department, which is an outpatient department. That day, Nurse Green communicated with Dr. Ericka Searles, the on-call attending physician in the unit. Although Nurse Green testified that she told Dr. Searles about Sudor's history of UTIs, Dr. Searles testified that she did not know about the prior UTIs. Sudor was also not informed that she should seek immediate follow-up care.

Five days later, she was admitted to Jackson Park. There, she was treated by a Dr. Fatima. Her medical records lacked the doctor's first name. The following day, Sudor returned to Advocate and was placed in the Intensive Care Unit, where she was diagnosed with severe sepsis secondary to a UTI. She was then transferred to Advocate Christ Medical Center, and her family ultimately decided to take her off extracorporeal membrane oxygenation support. Sudor died on July 6, 2015. At the time of her death, Sudor had four heirs, each of whom were four years old or younger.

Riley originally filed a state court complaint on March 22, 2017, naming Dr. Anees Fatima as a defendant.[2] In its answer to the original complaint on October 3, 2017, Jackson Park admitted it employed certain physicians, including Dr. Fatima, on May 30, 2015. But both Riley and Jackson Park had named the wrong Fatima. On August 28, 2018, Jackson Park moved to amend it answer

---

[1] Advocate challenges many of Riley's additional statements of fact as unsupported by the evidence or irrelevant. The Court considers supported statements and statements it finds relevant to the issues at hand.
[2] Riley asserts in his statement of material facts that he discovered Anees Fatima's information through researching the Illinois Department of Professional Regulation website. His statement is unsupported by any record evidence, as required by local rules, *see* N.D. Ill. Local Rule 56.1, and thus the Court does not consider it.

to correct its error and withdraw this admission. Riley amended his complaint on behalf of the estate and Sudor's beneficiaries on November 2, 2018, naming Dr. Naseem Fatima. Dr. Naseem Fatima had served as an intern for Jackson Park for one year, relocating to California after June 2015. She was not employed by Jackson Park when this lawsuit was filed, nor contacted about the lawsuit until her attorney contacted her on November 27, 2018.

*Proffered Expert Testimony*

During discovery, Riley disclosed the expert witnesses that intend to testify at trial. One of these witnesses is Katie Herrera, R.N., A.P.R.N., C.N.M. Riley disclosed that Herrera would provide the expert opinion as to the standard of care claims against Advocate for Nurse Green's conduct. Herrera is a licensed registered nurse and a certified nurse midwife. Nonetheless, Herrera has not worked as a registered nurse since 2012. When she worked as a nurse, she worked in the high-risk antepartum unit, an inpatient department. As a midwife, she works in an outpatient setting, provides prenatal care, and works in the hospital as a laborist, where she covers triage, labor, and delivery, and works alongside physicians. She has experience with pregnant patients who suffer from UTIs. She opined on the following in her expert report:

- Nurse Green breached the standard of care by telling Sudor to receive follow-up in a week, rather than two days;
- Nurse Green breached the standard of care when she did not tell Dr. Searles that Sudor had two prior UTIs during the current pregnancy;
- Nurse Green breached the standard of care when she did not communicate to Dr. Searles that Sudor had multiple UTIs during prior pregnancies; and
- Nurse Green breached the standard of care by not having another physician see Sudor when Dr. Searles asked.

Herrera also explained that had she told a physician about Sudor's history of UTIs, empirical treatment would have been initiated and she could have received antibiotics. Other experts also testified as to the importance of providing antibiotic care to UTI patients, such as Sudor, and that the outcome may have been different had she received such care.

3

**Legal Standard**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal citations omitted). In determining whether a genuine issue of material fact exists, this Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, "[m]erely alleging a factual dispute cannot defeat the summary judgment motion." *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**Discussion**

*Advocate*

The Court first considers Advocate's motion for summary judgment. Riley sued Advocate through its principal-agent relationship with Nurse Green. To support his wrongful death and survival act claims, both of which are premised on allegations of medical negligence, Riley offered opinions from his nursing expert, Herrera, to testify regarding the proper standard of care. Advocate's motion focuses upon this proffered expert evidence. Specifically, Advocate argues Herrera's opinions should be disregarded because she is not a qualified expert under *Daubert*. In the alternative, Advocate contends that Herrera's opinion fails to establish that Nurse Green's actions caused Sudor's death, such that the claims against Advocate must be dismissed.

Riley first claims that Illinois law applies to admission of this expert opinion and provides lengthy analysis regarding Illinois evidence law. Both parties' briefs muddle the issue as to which

law applies—indeed, Advocate first argues *Erie* applies in its opening brief, but then suggests that *Erie* is not relevant in its reply brief. In a case such as this where jurisdiction is established because the United States is a party, the Federal Rules of Evidence apply to admissibility of expert evidence. *See Love v. United States*, 17 F.4th 753, 755 (7th Cir. 2021) ("Federal rules govern the admissibility of expert evidence in suits under the FTCA."). For the supplemental state law claims, the *Erie* doctrine applies. *See Houben v. Telular Corp.*, 309 F.3d 1028, 1032 (7th Cir. 2002). Thus, this Court applies the federal rules of evidence and does not engage with the parties' state law arguments on this issue.

The Court serves as the gatekeeper to determine if the proposed expert testimony falls within Federal Rule of Evidence 702's requirements. *See Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) Federal Rule of Evidence 702 establishes that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion . . . if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Following *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), courts have established a framework to determine if expert testimony should be considered in a case. They assess the expert's qualifications, whether her testimony is reliable, and whether her opinions are relevant. *See, e.g., Gayton*, 593 F.3d at 616. The expert's proponent must show why the testimony is admissible. *Daubert*, 509 U.S. 592 n.10.

Advocate focuses on whether Herrera is qualified to give opinions about Nurse Green's standard of care. Herrera's opinion centers on the following: that Nurse Green deviated from the standard of care when she failed to advise Dr. Searles of Sudor's UTI history, that she failed to advise Dr. Searles about former UTIs during the current pregnancy, and that she failed to advise

5

Sudor that she needed immediate follow-up care. "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990). Advocate argues that Herrera, a midwife, has not worked as a registered nurse in over 10 years and was not working as registered nurse at the time of the incident. They also point out that she never worked in the same type of unit as Nurse Green. Thus, they claim she is unqualified to provide an opinion on the standard of care.

But the evidence shows that Herrera was, and is, a licensed registered nurse. Although she did not work in the exact same setting as the events that took place here, she has demonstrated experience with the issues at hand. In her role as a midwife, she has worked with pregnant patients with UTIs and works in the labor and delivery department at a hospital alongside physicians. "The fact that an expert may not be a specialist in the field that concerns her opinion typically goes to the weight to be placed on that opinion, not its admissibility." *Hall v. Flannery*, 840 F.3d 922, 929 (7th Cir. 2016). Although Herrera did not serve in the identical role to Nurse Green, she clearly has relevant experience in this arena, which supports her qualifications as an expert to testify on the issues in this case. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (discussing how courts "should consider a proposed expert's full range of practical experience as well as academic or technical training").

In *Gayton*, the Seventh Circuit similarly considered whether a physician expert was qualified to testify on the issues at hand. The Circuit found that it was proper to exclude the expert's opinion on the pharmacological effects of drugs but not proper to exclude his opinion on the effects of vomiting. Surprisingly, the opinion reasoned that the proffered expert lacked expert knowledge about drugs and their effects, but, as a competent physician, could offer opinions on the effects of vomiting. *Gayton*, 593 F.3d at 617–18. In this case, Herrera's knowledge as a midwife

6

*does* give her experiential knowledge about working with pregnant patients experiencing UTIs and about the relevant standard of care for those working with those patients. Thus, considering the arguments presented, the Court finds Herrera qualified to give expert testimony.

Advocate briefly states that Herrera's opinion should not be considered reliable because, since she is unqualified, her opinion would be based on mere speculation. As discussed above, the Court finds Herrera to be qualified to give an opinion on these issues. Based on the briefing, the Court has not been convinced that her methodology—she reviewed medical records, depositions and assessed them based on her experiences—was unsound. *See, e.g., id.* at 618 (finding that coming to conclusion "based solely on an examination of a cold record," along with experience, "provided a sufficient scientific basis" for his conclusion). Her opinion, discussing the standard of care, would assist the trier of fact in this case. Thus, the Court finds that summary judgment is not appropriate for Advocate as to whether Herrera's opinions are inadmissible.[3]

In the alternative, Advocate maintains it is entitled to summary judgment because Herrera did not specifically opine that Nurse Green's actions caused Sudor's death. To maintain a medical negligence claim in Illinois, the plaintiff must prove "(1) the proper standard of care by which to measure a defendant's conduct; (2) a negligent breach of the standard of care; and (3) that the resulting injury was proximately caused by the breach." *Seef v. Ingalls Memorial Hosp.*, 311 Ill. App. 3d 7, 15, 724 N.E.2d 115, 122, 243 Ill. Dec. 806, 813 (1st Dist. 1999). To show proximate cause, the plaintiff must show both cause in fact, or but for cause, and legal cause, that it was foreseeable that the acts could cause the injury. *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538, 549, 836 N.E.2d 640, 651–52, 296 Ill. Dec. 889, 900 (1st Dist. 2005). In a medical negligence case, a plaintiff must "generally prove" the elements of the claim "through medical expert testimony." *Id.*

---

[3] Riley points to two additional "experts" who can be used to establish the standard of care. These were not disclosed as experts, as required under the Federal Rules, and thus are not further considered. Fed. R. Civ. P. 26(a)(2).

Advocate argues that Herrera did not specifically testify that *if* Nurse Green had informed Dr. Searles of the prior UTIs and current UTIs, then Sudor would have survived. But Advocate improperly raises the burden here, given "[a] plaintiff does not need to present unequivocal or unqualified evidence of causation but can meet his burden through the introduction of circumstantial evidence." *Id.* at 549. Herrera did testify on the issue of causation: she claims that by not communicating with the doctor, Sudor did not receive antibiotic treatment. This testimony, combined with other proffered testimony regarding the need for antibiotics and how such treatment could be lifesaving, could lead a jury to find both cause in fact and that the harm was foreseeable. Whether this is enough is a question of fact, but it at least puts the proximate cause element in dispute.[4] Thus, the Court denies Advocate's motion for summary judgment.

*Dr. Fatima*

The Court next considers Fatima's motion for summary judgment. Fatima argues that the claims filed against her on November 2, 2018 are time-barred because the statute of limitations elapsed on July 6, 2017.[5] In Illinois, the statute of limitations for medical negligence claims is typically two years from when the claimant knew or should have known of the injury or death. *See* 735 ILCS 5/13-212(a) (providing a two-year statute of limitations for medical negligence claims). The parties do not dispute that the statute of limitations period here began to run no later than July

---

[4] Advocate also argues that Herrera's opinion regarding Nurse Green's failure to contact another physician is insufficient to demonstrate proximate cause, because the physician is left to make the discharge decision. It similarly argues that Herrera's opinion that it was a breach of the standard of care to not inform Sudor to return sooner is insufficient, as it is unclear how soon she could have gotten an appointment or whether Sudor would have actually followed the advice. The Court agrees that causation is more tenuous on these points. However, this is a motion for summary judgment. There is sufficient evidence to put this element in dispute, and thus the Court denies the motion. That does not mean, however, that these issues cannot be later resolved in other pretrial motions.

[5] Unlike the above issue, neither party contests that Illinois is the applicable law. Thus, the Court considers the parties arguments, applying Illinois law.

8

6, 2015, when Sudor died. Riley, however, argues his claims are timely as they fall within another statute's—the Statute of Repose—eight-year statute of limitations.

The Illinois Code of Civil Procedure establishes that:

> no action for damages for injury or death against any physician, . . . arising out of patient care shall be brought more than 8 years after the date on which occurred the act or omission or occurrence alleged in such action . . . where the person entitled to bring the action was, at the time the cause of action accrued, under 18 years.

735 ILCS 5/13-212(b). This case is brought by the case executor, Riley, on behalf of Sudor's four minor children, all of whom were under 18 when the wrongful death action arose. Thus, per the terms of the Statue of Repose, the heirs had eight years after July 6, 2015 to file their wrongful death claims. *See O'Brien v. O'Donoghue*, 292 Ill. App. 3d 699, 703, 686 N.Ed.2d 688, 691, 226 Ill. Dec 905, 908 (1st Dist. 1997). Fatima argues that "equity" requires dismissal, citing *Malinowski v. Mullangi*, 223 Ill. App. 3d 1037, 586 N.E.2d 323, 166 Ill. Dec. 365 (1st Dist. 1991), which found that the eight-year statute of repose did not apply where there was no viable action at the time of death. According to Fatima, the same principle should apply here, and the minor heirs should not be able to bring the case, because the *survival* action was not viable when the 2018 complaint was filed. The Court does not find this persuasive. The heirs would still have a claim here, even without the survival action, because Sudor had a viable cause of action at the time of death. As such, the statute of repose applies. The Court finds the wrongful death claim in the November 2018 amended complaint is not time-barred to the extent the claims are brought by minors and Fatima's motion for summary judgment is denied on this point. *See Monroe v. United States*, No. 04 C 7358, 2007 WL 839992, at *4 (N.D. Ill. Mar. 13, 2007) (Zagel, J.). However, to the extent Riley brought claims on his own, they are time-barred. *See id.*

The Court concludes that the above statute of repose does not apply to the survival act claim. The administrator of the estate pursuing a survival act claim "steps into the shoes of the

decedent and takes the rights of the decedent." *Moon v. Rhode*, 67 N.E.3d 220, 230, 409 Ill. Dec. 8, 18 (2016). For the survival action, Riley acted as the administrator of the estate, suing on behalf of Sudor. Sudor's medical malpractice action, that Riley brought under the Survival Act, is subject to the two-year statute of limitations. Riley has pointed us to no caselaw demonstrating the contrary or how the statute of repose applies to the Survival Act. As a result, the Court finds the survival act claim is time-barred.

The question thus remains whether an exception allows Riley to sue the correct Dr. Fatima under the survival act, or for any adult beneficiaries under the wrongful death act, even though the statute of limitations period has expired. The doctrine of misnomer is inapplicable here because Riley sued the wrong defendant entirely. *See Athmer v. C.E.I. Equipment Co., Inc.*, 121 F.3d 294, 296 (7th Cir. 1997) ("'Misnomer' denotes the case in which the plaintiff has the wrong name of the right party."). Fatima does not contest that Riley mistakenly sued the wrong Dr. Fatima first. Thus, the Court considers whether the doctrine of mistaken identity applies.

Again, this Court looks to the Illinois Rules of Civil Procedure, which establish four elements that must be met for a cause of action to "relate back" to the original complaint such that a time-barred defendant can be sued:

> (1) the time prescribed or limited had not expired when the original action was commenced; (2) the person, *within the time that the action might have been brought or the right asserted against him or her plus the time for service permitted under Supreme Court Rule 103(b), received such notice of the commencement of the action* that the person will not be prejudiced in maintaining a defense on the merits and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him or her; and (3) it appears from the original and amended pleadings that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading.

735 ILCS 5/2-616(d) (emphasis added).

Fatima focuses on the italicized portion of the above rule: that she lacked notice of the litigation within the required timeframe. Although Riley again contends that the statute of repose

10

applies, as discussed above, the statute of limitations for the Survival Act claim expired in July 2017. Thus, to fall within the scope of the statute, Fatima must have received notice within a reasonable time after July 6, 2017. It is uncontested that Fatima did not learn about the lawsuit until November 27, 2018. Therefore, the question remains whether Riley served Fatima in a reasonable time as required by Illinois Supreme Court Rule 103(b).

There are seven factors the court must consider when evaluating whether a plaintiff exercised reasonable diligence in serving a defendant, as described by Rule 103(b): (1) the length of time it took to serve defendant; (2) the plaintiff's activities; (3) plaintiff's knowledge of defendant's location; (4) the ease through defendant's whereabouts could be ascertained; (5) defendant's actual knowledge of the action; (6) special circumstances that could affect the plaintiff's efforts; and (7) actual service on defendant. *See Long v. Elborno*, 376 Ill. App. 3d 970, 979, 875 N.E.2d 1127, 1134, 314 Ill. Dec 840, 847 (1st Dist. 2007). Although Fatima cites *Long*, she only focuses on the first element: the time it took to serve defendant. Although sixteen months may be a long amount of time to serve the defendant, time, by itself, is not determinative. There are other factors that this Court must consider and they were left unaddressed by the parties. As a result, the Court cannot find that Fatima is entitled to summary judgment on this claim as a matter of law and denies Fatima's motion for summary judgment in its entirety.

The parties also dispute whether Fatima had constructive notice. Because it was fully briefed by the parties, the Court will briefly address this argument. Both parties cite *Borchers v. Franciscan Tertiary Province of Sacred Heart, Inc.*, 962 N.E.2d 29, 50–51, 356 Ill Dec. 685, 706–707 (2d Dist. 2011), which involved whether a nonmanagerial employee had constructive notice of the claim because its employer had notice of the claim. The *Borcher* court found that there was no constructive notice. *Id.* Similarly, this Court finds Fatima did not have constructive notice. Fatima had not been employed by Jackson Park for several years and had no contact with her attorney

until she was notified of the litigation in November 2018. Therefore, the Court does not find there was constructive notice. Nevertheless, because the Court finds that the parties have not sufficiently addressed the above issue, the Court denies the motion for summary judgment.

*Jackson Park*

Finally, the Court considers Jackson Park's partial motion for summary judgment. Jackson Park's motion is premised on Fatima's motion, because it is liable through respondeat superior principles. Riley incorrectly characterizes Jackson Park's motion as an attempt to dismiss the claims as they pertain to another individual; Rita McGuire. Because those claims are not at issue, the Court does not consider Riley's argument. Jackson Park maintains that "when *respondeat superior* is the sole asserted basis of liability against a master for the tort of his servant an adjudication on the merits in favor of either the master or servant precludes suit against the other." *Bachenski v. Malnati*, 11 F.3d 1371, 1377–78 (7th Cir. 1993), citing *Towns v. Yello Cab Co.*, 73 Ill. 2d 113, 382 N.E.2d 1217 (22 Ill. Dec. 519, (1978). Because none of the claims are dismissed against Fatima, neither are the claims against Jackson Park. Thus, Jackson Park's partial summary judgment motion is denied.

**Conclusion**

For the above reasons, the Court denies all three defendants' motions for summary judgment. The Court sets a status in 30 days to discuss next steps in the matter.

IT IS SO ORDERED.

Date: 9/28/2023      Entered:_____

SHARON JOHNSON COLEMAN
United States District Judge